J-A12038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD W. NILLES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KENNETH K. N. HU, M.D. | |
| Appellee | No. 1615 WDA 2016 |

Appeal from the Order Entered September 23, 2016
In the Court of Common Pleas of Butler County
Civil Division at No(s): A.D. No. 14-11007

BEFORE:  OLSON, SOLANO and RANSOM, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 29, 2017**

Appellant, Richard W. Nilles, appeals from the order entered on September 23, 2016, entering non-suit in favor of Kenneth K. N. Hu, M.D. (Dr. Hu) in a medical malpractice action for injuries allegedly caused by a needle biopsy.  We affirm.

We summarize the facts and procedural history of this case as follows. On December 30, 2014, Appellant filed a complaint against Dr. Hu.  The complaint alleged that, on December 3, 2012, Dr. Hu negligently positioned Appellant while performing a needle biopsy of Appellant's prostate which eventually resulted in the deterioration of his pelvic bone, a condition known as osteitis pubis.  The case proceeded to a jury trial beginning on August 15, 2016.  Appellant and his adult daughter testified.  Appellant also presented the video-recorded depositions of Sameer Dixit, M.D. (Dr. Dixit) and M.S.

Brodherson, M.D. (Dr. Brodherson) before resting his case. Thereafter, counsel for Dr. Hu orally moved for a compulsory non-suit, arguing that Appellant failed to meet his burden of proof on causation because Appellant's expert, "Dr. Brodherson[,] never anywhere in his testimony formulated or expressed an opinion to a reasonable degree of medical certainty or otherwise that the performance of the biopsy was a factual cause of the osteitis pubis in this case." N.T., 8/15/2016, at 147. On August 15, 2016, the trial court entered an order granting compulsory non-suit in Dr. Hu's favor. On August 22, 2016, Appellant filed a motion to remove non-suit. On August 23, 2016, the trial court entered an order scheduling briefing and a hearing on Appellant's motion to remove non-suit. Prior to the hearing, both parties submitted memoranda of law. The trial court held a hearing on September 23, 2016. In an order entered the same day, the trial court denied Appellant relief. This timely appeal resulted.[1]

On appeal, Appellant presents the following issue for our review:

Did the trial court commit an error when [it] granted a non-suit?

Appellant's Brief at 4.

_____

[1] Appellant filed a timely notice of appeal on Monday, October 24, 2016. *See* 1 Pa.C.S.A. § 1908 (when the last day of the 30-day appeal period falls on a weekend or legal holiday such day shall be omitted from the computation of time). On November 1, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on November 7, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 18, 2016.

- 2 -

Initially, we note that Appellant only cursorily cites to 42 Pa.C.S.A. § 742 to support his claim that this Court has jurisdiction over the instant appeal. **See** Appellant's Brief at 1. Appellant, however, does not supply any additional citations to legal authority with regard to our standard of review and the law pertaining to the entry of non-suit, the legal standards for a medical malpractice cause of action, and/or the requirements for expert testimony, as we discuss below *inter alia*.

We previously determined:

The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.

***Coulter v. Ramsden***, 94 A.3d 1080, 1088–1089 (Pa. Super. 2014) (internal citations, quotations and brackets omitted). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 647 (Pa. Super. 2013) (citation and original brackets omitted). Here, Appellant's

brief is woefully undeveloped and we could find waiver on this basis. Appellant's arguments, however, do not merit him relief.

Our standard of review is as follows:

An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury. In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor.

Additionally, a compulsory nonsuit is valid only in a clear case where the facts and circumstances lead to one conclusion—the absence of liability.

*Allen-Myland, Inc. v. Garmin Intern., Inc.*, 140 A.3d 677, 690–691 (Pa. Super. 2016) (internal citations and footnote omitted).

This Court previously determined:

Because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm. With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.

Further, [a]n expert witness proffered by a plaintiff in a medical malpractice action is required to testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. However, expert witnesses are not required to use magic words when expressing

their opinions; rather, the substance of their testimony must be examined to determine whether the expert has met the requisite standard. Moreover, in establishing a *prima facie* case, the plaintiff in a medical malpractice case need not exclude every possible explanation of the accident; it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows the defendant's conduct to have been a substantial cause of the harm to the plaintiff.

*Tillery v. Children's Hospital of Philadelphia*, 156 A.3d 1233, 1240 (Pa. Super. 2017) (citations and original brackets omitted).

At trial, to prove the elements of duty, breach and proximate cause, Appellant presented the expert testimony of Dr. Brodherson by way of video deposition and transcript. The trial court determined that "in examining the totality of the testimony of [Dr.] Brodherson [] that said testimony was insufficient to give rise to a jury question on the issue of causation, to the requisite degree of medical certainty." Trial Court Opinion, 11/18/2016, at 2. Upon review, we agree. In describing the potential cause for Appellant's injuries, Dr. Brodherson opined that "the [biopsy] needle, more likely than not went up against the pubic symphysis and irritated the bone there taking bacteria from the rectum, which is always a dirty part of the body, through the prostate and seeded the pubic bone, which eventually developed into an inflammatory condition – osteitis pubis." Deposition of Dr. Brodherson, 8/4/2016, at 11. Dr. Brodherson conceded that osteitis pubis could result from a fall or a trauma. *Id.* at 44. However, Dr. Brodherson claimed that although Appellant fell in June 2012, fracturing his spine, that fall was not the cause of his instant injury, because there were no studies showing the

presence of osteitis pubis at the time of the fall and Appellant did not complain about pubic bone pain until later. *Id.* at 45. Dr. Brodherson opined that, "if someone falls on their back and fractures their spine, I would find it difficult to ascribe osteitis pubis to that." *Id.* He further testified that his opinion that the injury to Appellant's pubic bone was caused by the needle biopsy was a "theory" or "one way [the injury] possibly could have occurred." *Id.* at 46. However, Dr. Brodherson stated he was unable to conclude that, within a reasonable degree of certainty, Appellant's injuries occurred pursuant to this theory. *Id.* at 47. He specifically testified that he could not be reasonably certain that the biopsy needle infected Appellant's pubic bone. *Id.* Dr. Brodherson claimed it was "conceivable that [] the needle went through the entire prostate, it could [have] hit the pubis." *Id.* at 49. In sum, Dr. Brodherson concluded:

> [E]ven if I were there I wouldn't know [if the biopsy needle went through the prostate into the pubic bone], but the evidence points so much in that direction that that is the only reasonable hypothesis. That is the best I can do for you.
>
> The patient had the biopsy done. The patient g[o]t osteitis pubis. [] There's no other reason for him to have gotten osteitis pubis and I am hypothesizing that it could be that the needle went through the prostate, touched the pubic bone, either infected it or inflamed it and we now have a patient with disabilities. That is all I'm saying.

*Id.* at 50.

Based upon the foregoing, we agree with the trial court that Appellant failed to present expert evidence on causation. Dr. Brodherson spoke in

scientific generalities, referring to broad theory and hypothesis. He used equivocal language, *i.e.* "could," "conceivably," and "possibly," in rendering his opinion that Dr. Hu may have caused Appellant's injury. Moreover, while Dr. Brodherson claims that he ruled out other causes, he acknowledged that a fall could cause the same injury and there was evidence that Appellant fell several months prior to the biopsy. Dr. Brodherson also specifically acknowledged that his opinion was not rendered with a reasonable degree of medical certainty. Thus, viewing the totality of Appellant's expert opinion, the jury would have been left to speculate as to whether Dr. Hu's actions actually caused Appellant's injury. Hence, Appellant did not introduce sufficient evidence to establish the necessary elements to maintain a negligence cause of action. Accordingly, we conclude that the trial court did not abuse its discretion or err as a matter of law in granting a non-suit and dismissing Appellant's claims.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2017

- 7 -